**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

In re:                                                                  Chapter 11

Quebecor World (USA), Inc., et al.,

                      Debtors.                     Case No. 08-10152 (JMP)
                                                                          (Jointly Administered)

----------------------------------------------------------------x

Eugene I. Davis, as Litigation Trustee for the
Quebecor World Litigation Trust,                                        Adv. Pro. No. 10-1568 (SHL)

                      Plaintiff,

       v.

Clarklift-West, Inc. dba Clarklift Team Power,

                      Defendant.
----------------------------------------------------------------x

## **MEMORANDUM OF DECISION GRANTING MOTION FOR SUMMARY JUDGMENT**

A P P E A R A N C E S:

ASK LLP
Counsel for Eugene I. Davis, as Litigation Trustee for the Quebecor World Litigation Trust
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
By:    Joseph L. Steinfeld, Jr.
         Kara E. Casteel

      -and-

151 West 46th Street, 4th Floor
New York, NY 10035
By:    Edward E. Neiger
         Marianna Udem

THE BIEGLER LAW FIRM
Counsel for Clarklift-West, Inc. dba Clarklift Team Power
725 University Ave
Sacramento, CA 95825
By:    Robert P. Biegler

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment filed by Plaintiff Eugene I. Davis, Litigation Trustee for the Quebecor World Litigation Trust (the "Trustee"). The Trustee asserts that ten transfers totaling $69,207.60 by the debtors to the defendant Clarklift-West, Inc. ("Clarklift"), shortly before the filing of the bankruptcy case, are preferences under Section 547(b) of the Bankruptcy Code (the "Code"). After accounting for undisputed defenses, the Trustee seeks the return of $35,865.58 in preference payments to the estate. Clarklift does not dispute that these transfers are preferences but it asserts the "ordinary course of business" defense under Section 547(c)(2) to exempt these transfers from recovery by the Trustee. For the reasons set forth below, the Court rejects Clarklift's ordinary course of business defense and grants the Trustee's motion for summary judgment.[1]

## BACKGROUND

There are no disputed material facts. On January 21, 2008 (the "Petition Date"), the Debtor filed for protection under Chapter 11 of the Code. On May 18, 2009, the Debtor filed its Third Amended Joint Plan of Reorganization of Quebecor World (USA), Inc. and Certain Affiliated Debtors and Debtors-In-Possession (the "Plan"). In June of 2009, the Plan was

---

[1] Because this Court is adjudicating a motion for summary judgment, it addresses whether it has the constitutional authority to issue a final decision in this case consistent with *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011) (holding that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."). Clarklift filed proofs of claim. [Dkt. 1999 at 17 (claim 9254 filed May 7, 2009, and claim 9255 filed May 7, 2009)]. The Trustee's preference claims would necessarily be resolved in ruling on the Defendant's proofs of claim as a result of Section 502(d) of the Bankruptcy Code, which provides that "the court shall disallow any claim of any entity ... that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title." 11 U.S.C. § 502(d). Having subjected itself to this Court by filing proofs of claim, the Court has the constitutional authority to issue a final judgment in this action. *See In re Tronox Inc.*, 503 B.R. 239, 344-45 (Bankr. S.D.N.Y. 2013) (citing *Katchen v. Landy,* 382 U.S. 323 (1966) and *Langenkamp v. Culp,* 498 U.S. 42 (1990)); *see also Davis v. R.A. Brooks Trucking Co. (In re Quebecor World (USA), Inc.)*, 491 B.R. 379, 384 (Bankr. S.D.N.Y. 2013).

confirmed. Pursuant to the Plan, a litigation trust administered by the Trustee was created to pursue certain claims as defined under the terms of the Plan.

The Debtor and the Defendant have a history of business dealings reaching back to at least 2005. Davis Decl. ¶¶ 18-19; Ex. E [ECF No. 41]. The Defendant was in the business of heavy equipment sales, rental, and service. Davis Decl. ¶¶ 18-19; Ex. I. During the 90 days before the Petition Date (the "Preference Period"),[3] the Debtors made—and the Defendant received—ten (10) transfers totaling $69,207.60 (the "Transfers"). Davis Decl. ¶ 7; Ex. A, Ex. B, Ex. C. These Transfers were made by check from the Debtors' corporate bank account. *Id.* at ¶ 8, Ex. B. At the time the Transfers were made, the Defendant was a creditor of the Debtors and all payments were made on account of antecedent debts. Def.'s Resp. to Statement of Undisputed Facts ¶¶ 16-17. By receiving full payment for these debts, Clarklift acknowledges that it recovered more than it would have in a hypothetical Chapter 7 liquidation because the Plan calls for general unsecured creditors to receive less than 100 cents on the dollar. *Id.* at ¶¶ 19-20. Pursuant to Section 547(f), the Debtors are presumed to have been insolvent during the Preference Period.

The Trustee concedes that $30,514.18 of these Transfers is not subject to avoidance under the "new value exception" of Section 547(c)(4) of the Code. *See* Hr'g Tr. 16:10-19, Feb. 20, 2014 [ECF No. 50]. The Trustee also concedes that another $3,372 qualifies under the ordinary course of business exception of Section 547(c)(2). *Id.* at 17:2-5. After accounting for these reductions, the Trustee seeks the return of $35,321.23 as preference payments, along with pre-judgment interest. *Id.* at 22.

## DISCUSSION

### I. Summary Judgment Standard

---

[3] The parties agree that the Preference Period was from October 23, 2007, to January 21, 2008.

It is appropriate for the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c) (made applicable to the adversary proceeding by Fed. R. Bankr. P. 7056). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986).

The moving party bears the burden of demonstrating the absence of any genuine dispute of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57; *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc. (In re Ames Dep't Stores, Inc.)*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). Thus, the moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this initial burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file" to demonstrate a genuine issue of fact. *Id.* at 324. A court should grant the motion if "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party." *Bundy Am. Corp. v. Blankfort (In re Blankfort)*, 217 B.R. 138, 143 (Bankr. S.D.N.Y. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## II.  Preferential Transfers and the Ordinary Course of Business Defense

To avoid a transfer as preferential under Section 547(b), the Trustee must establish five elements. The transfer must have been made:

    (1)    to or for the benefit of a creditor;

    (2)    for or on account of an antecedent debt owed by the debtor before such Transfers were made;

    (3)    made while the debtor was insolvent;

    (4)    on or within ninety (90) days before the date of filing of the petition; and

    (5)    enable the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b).

Clarklift concedes that all five elements have been satisfied here and, therefore, the Transfers qualify as preferential. *See* Def.'s Resp. to Statement of Undisputed Material Facts ¶¶ 13-20 [ECF No. 5045]. Clarklift nonetheless asserts that the $35,321.23 sought by the Trustee is not avoidable because it is exempted under the ordinary course of business defense of Section 547(c)(2). That section provides that a transfer shall not be avoided:

    (2)    to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was —

        (A)    made in the ordinary course of business or financial affairs of the debtor and the transferee; or

        (B)    made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

The ordinary course of business defense generally protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007) (quoting *Sender v. Heggland Family Trust (In re Hedged-Investments Assocs.)*, 48 F.3d 470, 475 (10th Cir. 1995)). The policy behind the defense is to "leave

undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 41 (2d Cir. 1996) (quoting H. Rep. No. 95-595 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6329).

Prior to the 2005 BAPCPA Amendments, a defendant was required to prove both elements of Section 547(c)(2) to establish the ordinary course of business defense. Today, however, the test is a disjunctive one. Thus, a defendant can prevail by demonstrating either the "subjective" test of Section 547(c)(2)(A) or the "objective" test of Section 547(c)(2)(B). *See Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, Adv. No. 08-1690, 2010 WL 4622449, at *2 (Bankr. S.D.N.Y. Nov. 4, 2010). Clarklift here only invokes Subsection (A), which is the "subjective element that requires an examination of whether a transfer was ordinary between the parties to the transfer." *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 603 (2d Cir. BAP 2000) (citations omitted). A defendant bears the burden of proving this defense by a preponderance of the evidence. 11 U.S.C. § 547(g)(2).

To determine what is ordinary under Subsection (A), the first step is to establish an historic baseline period as a point of comparison. *See In re Fabrikant*, 2010 WL 4622449, at *3; *see also In re Quebecor World (USA), Inc. (Davis v. R.A. Brooks Trucking Co.)*, 491 B.R. 379, 386 (Bankr. S.D.N.Y. 2013); *In re Sparrer Sausage Co. Inc.*, BR No. 12 B 04289, 2014 WL 4258103 (citing *In re of Tolona Pizza Prod. (In re Tolona)*, 3 F.3d 1029, 1033 (7th Cir. 1993)). "The starting point—and often ending point—involves consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average

lateness' computation theory." *In re Fabrikant,* 2010 WL 4622449, at *3. Courts suggest examining a period of time "well before" the preference period to establish the baseline. *See Fiber Lite Corp. v. Molded Acoustical Prods. (In re Molded Acoustical Prods., Inc.)*, 18 F.3d 217, 223 (3d Cir. 1993) (citing *In re Tolona*, 3 F.3d at 1032). This is to reduce the likelihood that the debtor's financial difficulties had already taken hold during the historical period and thus distort otherwise "ordinary" practices under regular financial conditions. *See In re Sparrer Sausage Co. Inc.*, 2014 WL 4528103, at *1.

"Once a baseline is established, the next step is to compare the average time it took the debtor to pay an invoice during the baseline period [with] the time it took the debtor to pay invoices in the preference period." *Id.* at *2. "Generally, this involves a comparison of the average number of days between the invoice and payment dates during the pre-preference and preference periods." *In re Fabrikant*, 2010 WL 4622449, at *4; s*ee also In re Sparrer Sausage Co. Inc.,* 2014 WL 4528103, at *2. Although a narrow band of difference is acceptable, payments delayed beyond a reasonable amount of time past the pre-preference period average generally do not fall within the ordinary course of business under Section 547(c)(2)(A). *See In re Fabrikant*, 2010 WL 4622449, at *3; Davis v. All Points Packaging & Distrib., Inc. (In re Quebecor World (USA), Inc.),* 491 B.R. 363, 370 (Bankr. S.D.N.Y. 2013), *aff'd, and adopted sub nom.*, 13 CIV. 3395 KBF, 2013 WL 6233905 (S.D.N.Y. Nov. 25, 2013). In *In re Fabrikant*, for example, the court rejected the argument that any payment is ordinary if it falls anywhere within the minimum and maximum number of days from invoice to payment during the historical period. *In re Fabrikant*, 2010 WL 4622449, at *4. Rather than using a total range as the measure of "ordinary," bankruptcy courts instead "compar[e] of the average number of days between the invoice and payment dates during the pre-preference and preference

periods" when analyzing a creditor's ordinary course of business defense. *In re Quebecor World (USA), Inc*, 491 B.R. at 386; *In re Fabrikant*, 2010 WL 4622449, at *3; *Hassett v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 120 (Bankr. S.D.N.Y. 1997). When a preference period payment falls beyond the pre-preference mean, therefore, courts typically find that the payment was made outside the ordinary course of business and thus not protected by Section 547(c)(2). *In re Quebecor World (USA), Inc*, 491 B.R. at 386; *In re Fabrikant*, 2010 WL 4622449, at *3; *In re CIS Corp.*, 214 B.R. at 120. Payments of this sort are presumptively non-ordinary unless the defendant can establish that such late payments were the standard course of dealing between the parties. *See In re Fabrikant*, 2010 WL 4622449, at *3*; see also In re Tolona,* 3 F.3d at 1032.

### III. Clarklift's Ordinary Course of Business Defense

Applying the methodology above to analyze the parties' payment history, the Defendant's ordinary course of business defense comes up short. The Trustee has analyzed the parties' payment history, including approximately 533 transfers during the historical period—October 26, 2005, through October 17, 2007—and approximately 82 transfers during the 90-day Preference Period. Davis Decl., Ex. D; Ex. E. During the historical period of their business relationship, for example, 83% of payments to Clarklift were made between 45 and 65 days past the invoice date. Davis Decl., Ex. D; Ex. F. During the Preference Period, however, less than six percent of payments were made during this period. *Id.* By contrast, over 70% of payments during the Preference Period were made between 76 and 85 days. Not surprisingly then, the weighted average time to payment increased from 50.29 days in the historical period to 77.79 days during the Preference Period. This represents a shift of 27.5 days, or 55%. As 99.97% of

Preference Period payments were made beyond 60 days, effectively none of these payments were transferred on or around the historical 50-day mean. *Id.*

Courts frequently have held that such a substantial shift in weighted average time to payment negates a defendant's ordinary course of business defense. *See, e.g.*, *Off. Plan Comm. v. Expeditors Int'l of Wash., Inc. (In re Gateway Pac. Corp.),* 153 F.3d 915, 918 (8th Cir. 1998) (payments not ordinary when there is a 19-day difference between the time to payment during the historical period and preference period)*; Official Comm. of Unsecured Creditors v. CRST, Inc. (In re CGG 1355, Inc.)*, 276 B.R. 377, 383-84 (Bankr. D.N.J. 2002) (not ordinary when payments made, on average, 89.50 days after the invoice date during the preference period compared to an average of 66.47 days during the parties' four-year business relationship and 73.44 days during the last full year of the relationship) [23-day and 16-day difference])*; In re CIS Corp.*, 214 B.R. at 120 (payments not ordinary where paid, on average 51 days after the due date during the pre-preference period and 80 days after the due date during the preference period) [29 day difference]).

Clarklift does not dispute the accuracy of these figures nor does it contest the methodology used to derive them. Clarklift instead cites *In re Central Valley Processing, Inc.*, 360 B.R. 676 (Bankr. E.D. Cal. 2007), for the proposition that "a 33% to 50% variance in the timeliness of the payment of invoices did not take said transaction(s) out of the 'ordinary course of business.'" Def.'s Opp'n 6:24-7:1. But *Central Valley* is distinguishable. Among other factors, the court in *Central Valley* expressly relied upon "the intervention of the Thanksgiving holiday just prior to the issuance" of the payments. *In re Central Valley*, 360 B.R. at 679. More specifically, the court took "judicial notice of the fact that in 2002 [the preference period year] Thanksgiving was on November 28.

The check for payment was written on the following Monday, December 2, and the intervention of that holiday weekend may well have been a factor . . . ." *Id.* at 679. Such a holiday would account for four or five days out of the ten-to-fifteen day delay in payment at issue in the case, a significant percentage. *See id.* (payments at issue were made 10-15 days later than 30 days specified in customer invoices). Given the lack of such unique facts here, the Court is not persuaded that *Central Valley* provides support for Clarklift's ordinary course of business defense. *See also id.* at 677-79 (identifying other problems regarding how the trustee measured the time of payment).

Clarklift also cites to the factors identified in *Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.)*, 356 B.R. 327, 340 (Bankr. S.D.N.Y. 2006), and argues that the majority of those factors support an ordinary course of business defense here. In *Pameco*, the court identified several factors to consider, including "(i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment. *Id*. at 340-41; *see also Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005). Citing these factors, Clarklift argues that the parties' Preference Period conduct was consistent with their historical dealings, the amount of the payments did not vary substantially, the circumstances of the payments remained the same, there were no unusual debt collection practices, and that the means of payment remained the same during the Preference Period. Biegler Decl. ¶¶ 7-11.

But the Defendant's reliance on *Pameco* fails for several reasons. First, Clarklift's reading of *Pameco* is inconsistent with this Circuit's jurisprudence. No case in

this Circuit has simply counted the number of factors identified in *Pameco* that favor each side as a dispositive formula to determine whether a payment was nonordinary. Instead, courts have articulated that late payments alone are "presumptively nonordinary" and that this presumption may be rebutted only though showing that such late payments "were the standard course of dealing between the parties." *In re Fabrikant,* 2010 WL 4622449, at *3 (quoting 5 Collier ¶ 504.04[2] [ii], at 547-55; *In re Tolona,* 3 F.3d at 1032). The focus on the lateness of the payments was recognized by the *Pameco* court. *See In re Pameco Corp.*, 356 B.R. at 340 ("[a]dditionally, payments substantially delayed beyond the due date are not in the ordinary course of business"). So while courts have weighed multiple factors in determining whether the ordinary course of business defense protects a transfer, the existence of some favorable factors identified in *Pameco* does not necessarily compensate for a large shift in mean time to payment.

Second, Clarklift's application of the *Pameco* factors is flawed. While Clarklift cites the first four Pameco factors, it does nothing to establish how these factors favor Clarklift in this case. Def.'s Opp. to Pl.'s Mot. for Summ. J., 5:25-6:19 [ECF No. 42] (citing only to Trustee's exhibits). Indeed, the first four factors in *Pameco* relate in large part to the number and timing of payments. As such, these factors are captured in large measure by the Trustee's extensive analysis of the payment history between the parties. Davis Decl. Ex. E. For the reasons stated above, that payment history does not establish an ordinary course of business defense because it reveals a significant change in the average lateness for payments in the historical period when compared with the Preference Period.

Clarklift fares little better as to the remaining two *Pameco* factors. Clarklift cites a lack of creditor pressure—*Pameco* factor five—but that factor does not necessarily

- 11 -

negate a substantial shift in the mean time to payment. "Making payments in response to creditor pressure can often be indicative of transactions out of the ordinary course. But the absence of such creditor pressure, while of course failing to support an out of the ordinary course finding for that reason, does not otherwise establish the opposite." *Ames Merch. Corp. v. Cellmark Paper Inc. (In re Ames Dep't Stores, Inc.)*, 450 B.R. 24, 33 (Bankr. S.D.N.Y. 2011), *aff'd*, 470 B.R. 280 (S.D.N.Y. 2012), *aff'd*, 506 Fed. App'x. 70 (2d Cir. 2012). Similarly, consistency in the manner of payment—*Pameco* factor six—does not render a payment ordinary when it is accompanied by a noticeable change in payment timing. *In re Fabrikant,* 2010 WL 4622449, at *3-4. In short, the existence of two *Pameco* factors here simply does not overcome the significant increase in average payment time during the Preference Period.

Clarklift submits only one piece of evidence on its behalf: a letter from Quebecor to its suppliers. The letter notes, among other things, that Quebecor "look[s] forward to maintaining [its] business relationship with you." Def.'s Opp'n; Ex. 1, ¶ 5. This letter, however, appears to have been sent out to all of Quebecor's suppliers, not just the Defendant, and does not mention any specific details pertaining to Quebecor's business relationship with Clarklift. *See id.* The document is addressed generically to "Quebecor World Supplier" and does not reference Clarklift at any point in the letter. *Id.* For all these reasons, the letter does not support Clarklift's defense.

In sum, the Court rejects Clarklift's ordinary course of business defense, given the undisputed and significant difference in the timing of payments during the historical period and the Preference Period. Nothing in Clarklift's exhibits establishes that late payments of the magnitude described above constituted the "standard course of dealing between the parties." *See* Biegler Decl., Ex. 1 [ECF No. 44]; *see In re Fabrikant*, 2010

WL 4622449, at *3.  As such, the Defendant has failed to come forward with evidence sufficient to raise a material issue of fact on the ordinary course of business defense.

### IV.  Pre-Judgment Interest

Under Section 547 of the Code, Courts have the discretion to grant pre-judgment interest. *In re Pameco Corp.*, 356 B.R. at 342.  Section 550(a) of the Code allows the Plaintiff to recover the value of property transferred under Section 547.  Section 550 serves to restore the estate to the full value of the asset transferred to the creditor.  *In re L & T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. M.D. La. 1989).  This value includes interest on the preference payments. *Id.*  Pre-judgment interest is not a penalty to the creditor.  Rather, it compensates the estate for the time value of money it would have earned had the transfer not taken place.  Therefore, the Court grants the Trustee's request for interest, which was $544.34 as of the date of filing the motion.

### **CONCLUSION**

For the reasons above, the Court grants the Plaintiff's motion for summary judgment. The estate is entitled to recover $35,865.58, together with applicable interest.  The Plaintiff shall submit an order on three days' notice.

IT IS SO ORDERED.

Dated: New York, New York
       October 14, 2014

                                           */s/ Sean H. Lane*
                                           UNITED STATES BANKRUPTCY JUDGE